SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Wayne Davis v. Brickman Landscaping, Ltd.** (A-22/23/24-12) (071310)

**Argued March 4, 2014 -- Decided September 15, 2014**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether expert testimony must be offered to establish the standard of care applicable to fire sprinkler inspectors who performed their inspections pursuant to relevant provisions of the New Jersey Uniform Fire Code (UFC), N.J.A.C. 5:70-1.1 to -4.20. If such expert testimony is required, the Court considers whether plaintiffs' expert adequately supported his asserted standard of care, and a breach thereof.

Plaintiff Irene Davis and her two children resided in a second-floor suite at the Staybridge Suites Hotel, which had a storage closet without a fire sprinkler beneath a staircase leading to the second-floor. Defendants Atlantic Fire Service (Atlantic), Cintas Corporation (Cintas), and Master Protection L.P., d/b/a FireMaster L.P. (FireMaster) each performed sprinkler inspections at the hotel and did not advise the hotel owner that the storage closet required a fire sprinkler. A fire subsequently occurred at the hotel, causing serious injury to Davis and killing her two children. Plaintiffs Davis and her husband, individually and on behalf of the estates of their children, brought claims against Atlantic, Cintas, and FireMaster alleging that defendants' inspectors had negligently failed to inform the hotel owner of the need to install a sprinkler in the storage closet.

Plaintiffs and defendants each presented an expert during pretrial proceedings to address the proper standard of care for defendants' inspectors. Defendants' expert asserted that a standard developed by the National Fire Protection Association (NFPA) and adopted by reference into the UFC -- NFPA 25 -- represented the full extent of the responsibilities of private sprinkler maintenance inspectors. Defendants' expert concluded that defendants' inspectors had properly complied with NFPA 25, which did not require them to evaluate the need for an additional sprinkler or to notify the hotel owner about any such need. Plaintiffs' expert agreed that NFPA 25 did not require defendants' inspectors to identify or report the need for an additional sprinkler, but stated that sprinkler inspectors must exercise reasonable care, a standard that requires precautions beyond compliance with NFPA 25. He concluded that defendants' inspectors failed to exercise reasonable care when they neglected to notify the hotel owner that a sprinkler was needed in the storage closet.

Following discovery, defendants moved for summary judgment, arguing that NFPA 25 constituted the applicable standard of care and that plaintiffs could not prove that defendants' inspectors breached that standard. They also asserted that defendants' expert's view -- that a higher standard of reasonable care must be satisfied -- constituted an impermissible net opinion. The trial court found that defendants' inspectors were not required to satisfy any standard of care beyond that contained in NFPA 25, and that plaintiffs had failed to establish that defendants had breached that standard. Therefore, the trial court granted summary judgment in favor of Atlantic, Cintas, and FireMaster. The Appellate Division reversed, finding that compliance with safety regulations, such as NFPA 25, was not dispositive on the issue of negligence. The panel found that reasonable care constituted the relevant standard, and whether defendants exercised adequate care remained a question of material fact for the jury to decide. The Court granted defendants' petitions for certification. 212 N.J. 459 (2012).

**HELD**: Plaintiffs were required to establish the applicable standard of care through expert testimony. The standard of care set forth by plaintiffs' expert constituted an inadmissible net opinion because it lacked objective support. Summary judgment in defendants' favor was appropriate because, as a result of plaintiffs' failure to support their asserted standard of care, they were unable to establish the required elements of their negligence claim.

1. Summary judgment is appropriate when the record demonstrates that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The Court considers "whether the competent evidential materials presented, when viewed in the light most favorable to

1

the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). In most negligence cases, the plaintiff is not required to establish the applicable standard of care because "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996). In cases in which "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable," Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982), however, the plaintiff must "establish the requisite standard of care and [the defendant's] deviation from that standard" by "present[ing] reliable expert testimony," Giantonnio, 291 N.J. Super. at 42. (pp. 10-13)

2. The inspection of fire sprinklers by qualified contractors "constitutes a complex process involving assessment of a myriad of factors" that "is beyond the ken of the average juror." Cf. Giantonnio, 291 N.J. Super. at 44. The average juror would be unfamiliar with the training that sprinkler inspectors receive, what training would be necessary for an inspector to properly identify system design flaws such as the need for an additional sprinkler, and the regulatory scheme applicable to sprinkler inspectors. In fact, the fire codes and standards relevant to sprinkler inspectors are particularly complex. In 1983, the Legislature enacted the Uniform Fire Safety Act and directed the Department of Community Affairs (DCA) to promulgate a uniform fire safety code that included requirements for fire suppression systems. N.J.S.A. 52:27D-198(a) and (b). Pursuant to those legislative instructions, the DCA promulgated the UFC. As part of the UFC, the DCA later adopted by reference the Building Officials and Code Administrators' (BOCA) 1996 National Fire Prevention Code (1996 BOCA Code), which required water sprinkler systems to be inspected in accordance with NFPA 25. BOCA National Fire Prevention Code/1996, § F-506.1. Thus, NFPA 25 became part of the UFC through the adoption, by reference, of the 1996 BOCA Code. Because familiarity with New Jersey's complex regulatory scheme, as well as the role of fire sprinkler inspectors in that system, is necessary to determine the appropriate standard of care by which to assess defendants' inspectors conduct, plaintiffs were required to produce an expert to establish the standard of care and any departure from that standard. (pp. 13-16)

3. Compliance with NFPA 25 does not, as a matter of law, prevent a finding of negligence. "The customs of an industry are not conclusive on the issue of the proper standard of care; they are at most evidential of this standard." Wellenheider v. Rader, 49 N.J. 1, 7 (1967). Similarly, a regulatory code or standard "is evidence of due care but is not conclusive on the subject." Black v. Pub. Serv. Electric & Gas Co., 56 N.J. 63, 77 (1970). In Black, when considering whether a utility company could be found negligent for failing to post danger signs not required by the National Electric Safety Code, which had been adopted into the relevant regulations, the Court explained that "safety codes represent minimum standards and do not establish the complete duty of the utility under all circumstances." Id. at 76-77. Here, because the DCA promulgated the UFC at the Legislature's direction to create a uniform fire safety code with requirements for fire suppression systems, the UFC or its successor provides the standard of care for defendants' inspectors absent competent expert testimony that a different standard of care is generally recognized in the fire prevention field. (pp. 18-20)

4. An expert may not provide "mere net opinion." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). An expert offers an inadmissible net opinion if he or she "cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal.'" Ibid. Plaintiffs' expert's assertion that defendants' inspectors had a duty beyond NFPA 25 to report the need for an additional sprinkler lacked objective support. None of plaintiffs' expert's sources addressed the role of sprinkler inspectors. Although he maintained that NFPA 25 is "written wrong" and should have included a requirement for reporting design flaws, he did not "reference any written document or unwritten custom accepted by the [fire safety] community" to buttress that opinion. Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001). The standard of care set forth by plaintiffs' expert represented only his personal view, and therefore constituted inadmissible net opinion. Because plaintiffs did support their asserted standard of care and a breach of that standard with admissible expert testimony, they are unable to establish the required elements of their negligence cause of action. Defendants are therefore entitled to summary judgment. (pp. 16-18, 20-23).

The judgment of the Appellate Division is **REVERSED,** and the trial court's orders granting defendants' motions for summary judgment are **REINSTATED**.

2

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and ALBIN, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE PATTERSON did not participate.**

WAYNE DAVIS and IRENE LAVERNE
DAVIS, individually and on
behalf of the ESTATES OF
COURTNEY DAVIS and MYLES
DAVIS, deceased,

      Plaintiffs-Respondents,

         v.

BRICKMAN LANDSCAPING, LTD.,
d/b/a BRICKMAN LANDSCAPING,
GENERATED MATERIALS, LLC,
NORTHERN FIRE AND SAFETY,
TOWNSHIP OF FRANKLIN, COUNTY
OF SOMERSET, JOHN GOODMAN,
DENISE GOODMAN, JANET DEMARY,
ANN KINGSTON, CONNIE GORDON,
KAY STYLES-TIMMONS, WENDY
LAFORTUNE, and TYSHEE STYLES,

      Defendants,

         and

ATLANTIC FIRE SERVICE, CINTAS
CORPORATION and MASTER
PROTECTION LP, d/b/a
FIREMASTER LP,

      Defendants-Appellants.

        Argued March 4, 2014 – Decided September 15, 2014

        On certification to the Superior Court,
        Appellate Division.

        Michael B. Devins argued the cause for
        appellant Cintas Corporation (McElroy,
        Deutsch, Mulvaney & Carpenter, attorneys;
        Mr. Devins, Walter R. Krzastek, and Joseph
        G. Fuoco, on the briefs).

Michael L. Trucillo argued the cause for appellant Atlantic Fire Service (Lewis Brisbois Bisgaard & Smith, attorneys; Martin J. Sullivan, of counsel; Mr. Trucillo and Mr. Sullivan, on the briefs).

Charles C. Eblen argued the cause for appellant Master Protection LP d/b/a FireMaster LP (Shook, Hardy & Bacon, attorneys; Mr. Eblen and Karen A. Read, a member of the Missouri bar, on the briefs).

G. Martin Meyers argued the cause for respondents (Law Offices of G. Martin Meyers, attorney; Mr. Meyers and Susan S. Singer, of counsel and on the briefs).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

This appeal presents two questions related to the standard of care that private fire sprinkler maintenance inspectors are required to exercise. First, we are asked to consider whether plaintiffs must offer expert testimony to establish the standard of care applicable to fire sprinkler inspectors who performed their inspections pursuant to relevant provisions of the New Jersey Uniform Fire Code (UFC), N.J.A.C. 5:70-1.1 to -4.20. If such expert testimony is required, we are then called upon to address whether plaintiffs' expert adequately supported his asserted standard of care, and a breach thereof, or whether he offered an inadmissible net opinion.

The defendants in this case are private fire sprinkler inspection companies that were hired to assess the operating

2

condition of a hotel's sprinkler system.  Following a fatal fire at the hotel, the parents of the victims, individually and on behalf of the estates of the decedents, alleged that defendants had negligently failed to inform the hotel owner about a flaw in the design of the hotel's sprinkler system.

At the trial level, the court granted defendants' motions for summary judgment.  The court explained that defendants' inspectors had possessed no duty to report any sprinkler system design flaws to the hotel owner because applicable State regulations did not necessitate any such reporting.  The Appellate Division reversed, agreeing with plaintiffs' contention that defendants' compliance with regulatory requirements was not dispositive of the issue of negligence. The appellate panel explained that defendants owed plaintiffs a duty of reasonable care and that a jury should decide whether defendants had been obliged to exceed the dictates of the regulations in their exercise of reasonable care.

After considering the complex nature of the Uniform Fire Code and other factors relevant to sprinkler inspections, we conclude that a jury should not be allowed to speculate as to the proper standard of care in this case.  Instead, we hold that plaintiffs were required to establish the applicable standard of care through expert testimony.  Although plaintiffs presented an expert during pretrial proceedings, the standard of care he set

3

forth represented only his personal view and was not founded upon any objective support. His opinion as to the applicable standard of care thus constituted an inadmissible net opinion. As a result of plaintiffs' failure to support their asserted standard of care with admissible expert testimony, they were unable to establish the required elements of their negligence cause of action. We therefore reverse the judgment of the Appellate Division and reinstate the trial court's grant of summary judgment to defendants.

## I.

### A.

Defendants Atlantic Fire Service (Atlantic), Cintas Corporation (Cintas), and Master Protection L.P., d/b/a FireMaster L.P. (FireMaster) were each hired to perform sprinkler inspections at the Staybridge Suites Hotel in Somerset in the years preceding the fire. FireMaster completed the inspections between 1992 and 1997. Atlantic inspected the sprinklers between 1997 and 2004. After Cintas purchased Atlantic, Cintas completed the inspections between November 2004 and May 2005.

A fire occurred at the Staybridge Suites Hotel on May 13, 2005. On that date, Irene Davis was temporarily residing in a second-floor suite with her two children. The primary means of egress from that suite was an external, combustible staircase

4

that led from the second-floor suites to the hotel's parking lot.  Beneath that staircase, the hotel had constructed a storage closet but had not installed a sprinkler in the closet.[1]

The May 2005 fire was sparked by a lit cigarette butt, which someone threw into the landscaping mulch beside the hotel. The fire spread to the storage closet and then up the stairs to the second floor.  Davis and her children became trapped in their suite.  Tragically, the two children did not survive the fire.  Davis was rescued by emergency personnel after suffering serious injuries from smoke inhalation.

B.

Following the fatal fire, plaintiffs Irene Davis and her husband, Wayne Davis, filed suit individually and on behalf of the estates of their deceased children against various defendants.  In addition to their claims against the hotel and the hotel's landscaping contractor, among others, plaintiffs brought negligence claims against Atlantic, Cintas, and

_____

[1] The parties disagree over whether the hotel owner was required to install a sprinkler in that closet.  Plaintiffs assert that the applicable regulatory standard was National Fire Protection Association (NFPA) 13, which applies generally to all buildings. NFPA 13, § 1.1.  That standard instructs that sprinklers must be installed "throughout the premises," with only limited exceptions.  NFPA 13, §§ 8.1.1(1), (4).  In contrast, defendants contend that NFPA 13R governed the sprinkler system requirements.  NFPA 13R applies only to low-rise residential buildings.  NFPA 13R, § 1.1.  That standard does not call for sprinklers in "closets on exterior balconies," unless those closets directly connect with, or penetrate into, a dwelling unit.  NFPA 13R, § 6.8.6.

5

FireMaster.[2]  Plaintiffs alleged that defendants' inspectors had negligently failed to inform the hotel owner of the need to install a sprinkler in the storage closet beneath the staircase. Plaintiffs asserted that, had such a sprinkler been installed, Davis and her children would have been able to escape the fire.

Both plaintiffs and defendants obtained expert reports that addressed the proper standard of care by which the performance of defendants' inspectors should be measured.

Defendants' expert, Russell Fleming, asserted that applicable provisions of the Uniform Fire Code delineated the extent of the care that defendants' inspectors were required to exercise.  Specifically, Fleming pointed to one standard developed by the National Fire Protection Association (NFPA) and adopted by reference into the Uniform Fire Code -- NFPA 25 -- as representing the full extent of the responsibilities of private sprinkler maintenance inspectors.  Fleming concluded that defendants' inspectors had properly complied with all requirements of NFPA 25 and that NFPA 25 obligated them neither to evaluate the need for an additional sprinkler nor to notify the hotel owner about any such need.

---

[2] This appeal involves only plaintiffs' negligence claims against Atlantic, Cintas, and FireMaster.  All claims against other defendants have been otherwise resolved.

Plaintiffs' expert, Jack Mawhinney,[3] agreed that NFPA 25 did not require defendants' inspectors to identify or report defects in the design of a sprinkler system, such as the need for an additional sprinkler.  However, he further asserted that "NFPA 25 . . . [i]s just written wrong," and that reasonable care obligates sprinkler inspectors to take additional precautions beyond those set forth in NFPA 25.  He admitted that he was "not familiar with the law in New Jersey," but nonetheless believed that "[t]here is an expectation of [a] standard of reasonable care which applies throughout the country that . . . thought and experience and knowledge has to be applied in following the requirement of the regulations."  He thus concluded that defendants' inspectors failed to exercise reasonable care when they neglected to notify the hotel owner that a sprinkler was needed in the storage closet beneath the staircase at issue.

Following discovery, defendants moved for summary judgment. They argued that they could not be found negligent because NFPA 25 constituted the applicable standard of care and that plaintiffs could not point to any evidence that defendants' inspectors had failed to satisfy the requirements of that standard.  They also asserted that Mawhinney's view -- that a

---

[3] Plaintiffs also obtained a report from a second expert, Joseph McCarey, but the trial court granted defendants' motion to strike that report as a net opinion.  Plaintiffs did not appeal that outcome.

higher standard of reasonable care must be satisfied --
constituted an impermissible net opinion.

The trial court agreed with defendants that there existed
no genuine issue of material fact as to whether they had
negligently inspected the Staybridge Suites Hotel. The court
did not strike Mawhinney's opinion but nonetheless held that
defendants had not been required to satisfy any standard of care
beyond that contained in NFPA 25. Therefore, because plaintiffs
had failed to establish that defendants had breached the duty of
care set forth by NFPA 25, the trial court granted summary
judgment to Atlantic, Cintas, and FireMaster.

On appeal, the Appellate Division reversed the trial
court's grant of summary judgment to all three defendants.[4] The
panel explained that compliance with safety regulations, such as
NFPA 25, was not dispositive on the issue of negligence.
Instead, reasonable care constituted the relevant standard, and
whether defendants exercised adequate care remained a question
of material fact for the jury to decide.

Each of the three defendants petitioned this Court for
certification, and we granted their petitions. 212 N.J. 459
(2012).

II.

---

[4] The appellate panel also affirmed the trial court's denial of
summary judgment to plaintiffs. That issue is not relevant to
this appeal.

8

Defendants urge this Court to reverse the Appellate Division and reinstate the trial court's grant of their motions for summary judgment. They contend that plaintiffs bear the burden of establishing defendants' breach of the appropriate standard of care and that plaintiffs have failed to demonstrate that the proper standard exceeds the requirements of NFPA 25. Although plaintiffs' expert, Mawhinney, asserted that reasonable care required defendants to report the need for an additional sprinkler, defendants characterize his assertion as an impermissible net opinion because it was not supported by sufficient objective authority. Therefore, defendants maintain that plaintiffs failed to demonstrate a prima facie case of negligence.

In contrast, plaintiffs ask this Court to affirm the Appellate Division's reversal of summary judgment. Plaintiffs argue that NFPA 25 sets forth only the minimum requirements for sprinkler inspectors and that compliance with that standard is thus not dispositive on the issue of negligence. Instead, defendants' sprinkler inspectors may be held to a higher standard of care if a jury determines that reasonable care necssitated additional precautions beyond the dictates of NFPA 25. Plaintiffs point to Mawhinney's opinion as support for the existence of such a higher standard of care. They contend that Mawhinney referenced sufficient authority when he opined that a

9

reasonable inspector would have notified the hotel owner about the absence of a needed sprinkler and thus that his conclusion should not be characterized as a net opinion.  For those reasons, plaintiffs maintain that summary judgment is inappropriate and that the case should proceed to trial so that a jury can determine what reasonable care required.

III.

A.

A ruling on summary judgment is reviewed de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014).  We thus "apply the same standard governing the trial court," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012), and do not defer to the trial court's or Appellate Division's interpretation of "the meaning of a statute or the common law," Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Our court rules require summary judgment to be granted when the record demonstrates that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  Rule 4:46-2(c).  This Court thus considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co.

10

of Am., 142 N.J. 520, 540 (1995). In applying that standard, a court properly grants summary judgment "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259, 106 S. Ct. 2505, 2516, 91 L. Ed. 2d 202, 219 (1986)).

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). The plaintiff bears the burden of establishing those elements, Buckelew v. Grossbard, 87 N.J. 512, 525 (1981), "by some competent proof," Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953), aff'd o.b., 14 N.J. 526 (1954).

B.

Plaintiffs and defendants disagree over whether plaintiffs have adequately established defendants' duty to plaintiffs and defendants' breach of that duty. Although defendants do not deny the existence of their legal duty to plaintiffs, they assert that plaintiffs have not adequately defined the contours of that duty. Specifically, defendants contend that plaintiffs must set forth the applicable standard of care and a breach of that standard through admissible expert testimony.

11

In most negligence cases, the plaintiff is not required to establish the applicable standard of care. Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961). In those cases, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were. The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken." Ibid. Such cases involve facts about which "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996).

In some cases, however, the "jury is not competent to supply the standard by which to measure the defendant's conduct," Sanzari, supra, 34 N.J. at 134-35, and the plaintiff must instead "establish the requisite standard of care and [the defendant's] deviation from that standard" by "present[ing] reliable expert testimony on the subject," Giantonnio, supra, 291 N.J. Super. at 42. This Court has previously explained that, when deciding whether expert testimony is necessary, a court properly considers "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." Butler v. Acme Mkts., Inc., 89

12

N.J. 270, 283 (1982).  In such cases, the jury "would have to speculate without the aid of expert testimony."  Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

Cases requiring the plaintiff to "advance expert testimony establishing an accepted standard of care" include "the ordinary dental or medical malpractice case."  Sanzari, supra, 34 N.J. at 134-35; accord Bender v. Adelson, 187 N.J. 411, 435 (2006).  In addition, our courts have recognized other esoteric subject matters requiring expert testimony, such as "the responsibilities and functions of real-estate brokers with respect to open-house tours," Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993), precautions necessary to ensure "the safe conduct of a funeral procession," Giantonnio, supra, 291 N.J. Super. at 44, the appropriate "conduct of those teaching karate," Fantini v. Alexander, 172 N.J. Super. 105, 108 (App. Div. 1980), the proper application of "pertinent skydiving guidelines," Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 215 (App. Div.), certif. denied, 174 N.J. 43 (2002), and the proper "repair and inspection" of an automobile, Ford Motor Credit Co. v. Mendola, 427 N.J. Super. 226, 236-37 (App. Div. 2012).

Similar to previous cases in which New Jersey courts have required the plaintiffs to establish the standard of care through expert testimony, the inspection of fire sprinklers by

13

qualified contractors also "constitutes a complex process involving assessment of a myriad of factors" that "is beyond the ken of the average juror." Cf. Giantonnio, supra, 291 N.J. Super. at 44. Therefore, plaintiffs were required to produce an expert in fire prevention engineering to explain New Jersey's complex regulatory scheme as well as the role that fire sprinkler inspectors properly play amidst that system. The average juror would be familiar with neither the training that such sprinkler inspectors receive nor what training would be necessary for an inspector to properly identify system design flaws and recognize the need for an additional sprinkler. Similarly, the jury would be unfamiliar with the Uniform Fire Code, N.J.A.C. 5:70-1.1 to -4.20, including NFPA 25 and other standards adopted by reference into that code.

New Jersey's fire codes and standards are particularly complex, as illustrated by the history of NFPA 25. In 1983, the Legislature enacted the Uniform Fire Safety Act. See L. 1983, c. 383 (codified as amended at N.J.S.A. 52:27D-192 to -198.6). The express purpose of that statute was to create a "uniform, minimum, fire safety code" to prevent loss of life, ensure fire safety inspections, and provide for penalties for violations. N.J.S.A. 52:27D-195. The Legislature specifically instructed the Department of Community Affairs (DCA) to "promulgate . . . regulations to [e]nsure the maintenance and operation of

14

buildings and equipment in such a manner as will provide a reasonable degree of safety from fire and explosion." N.J.S.A. 52:27D-198(a). The Legislature required that those regulations "shall include a uniform fire safety code primarily based on the standards established by the Life Safety Code ([NFPA] 101) and any other fire codes of the [NFPA] and the Building Officials and Code Administrators International (BOCA) Basic Fire Prevention Code, both of which may be adopted by reference." Ibid. The Legislature further directed that the fire safety code would include requirements for fire suppression systems. N.J.S.A. 52:27D-198(b).

Pursuant to those legislative instructions, the DCA promulgated a Uniform Fire Code. N.J.A.C. 5:70-1.1 to -4.20. As part of that fire code, the DCA later adopted by reference the 1996 BOCA National Fire Prevention Code (1996 BOCA Code), which thereafter constituted "the State Fire Prevention Code for New Jersey." N.J.A.C. 5:70-3.1(a) (pre-2008 amendment[5]). The 1996 BOCA Code instructed that "[a]ll water sprinkler . . . systems shall be periodically inspected, tested and maintained in accordance with the requirements of NFPA 25." BOCA National Fire Prevention Code/1996, § F-506.1 (emphasis removed). In short, through the DCA's adoption of the 1996 BOCA Code, the

_____

[5] In 2008, the DCA amended N.J.A.C. 5:70-3.1(a) to instead adopt by reference the "2006 International Fire Code" as the State Fire Prevention Code. N.J.A.C. 5:70-3.1(a) (2014).

15

provisions of NFPA 25 were also given the force of law in New Jersey. NFPA 25, set forth the requirements for the "inspection, testing, and maintenance of water-based fire protection systems." NFPA 25, § 1.1. Thus, familiarity with that standard, as well as other provisions of the fire code, is necessary to determine the appropriate standard of care by which to assess defendants' conduct, and identification of the relevant standard and any departure from that standard requires expert testimony.

## C.

Having concluded that expert testimony is required to establish the standard of care in this case, we next turn to the question of whether plaintiffs adequately supported the standard of care that they asserted through admissible expert testimony.

An expert may not provide an opinion at trial that constitutes "mere net opinion." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). The rule prohibiting net opinions is a "corollary" of New Jersey Rule of Evidence 703, State v. Townsend, 186 N.J. 473, 494 (2006), which provides that an expert's testimony "may be based on facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions

16

on the same subject," Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 703 (2014).  Thus, the net opinion rule can be considered a "restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, [are] inadmissible."  Buckelew, supra, 87 N.J. at 524.

The net opinion rule "requir[es] that the expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'"  Pomerantz Paper Corp., supra, 207 N.J. at 372 (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).  For example, "a trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified."  Id. at 373.  Therefore, an expert offers an inadmissible net opinion if he or she "cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal.'"  Ibid.

Plaintiffs' expert, Mawhinney, asserted in both his report and deposition that a reasonable sprinkler inspector would have informed the owner of the Staybridge Suites Hotel about the need for an additional sprinkler in the storage closet beneath the external staircase.  That conclusion, however, represented an impermissible net opinion because it lacked objective support.

Mawhinney referenced several NFPA standards in his report, but they were not sufficient to support his opinion as to the

applicable standard of care. For example, he discussed NFPA 25 and its 2008 handbook, which address the responsibilities of sprinkler inspectors when completing a sprinkler maintenance inspection of the kind that defendants performed at the Staybridge Suites Hotel. NFPA 25 defines "inspection" as "[a] visual examination of a system or portion thereof to verify that it appears to be in operating condition and is free of physical damage." NFPA 25, § 3.3.19. Mawhinney acknowledged that NFPA 25 makes no mention of any duty by sprinkler inspectors to report deficiencies in the design of a sprinkler system, such as the need to install an additional fire sprinkler. Thus defendants' inspectors did not violate NFPA 25 by failing to identify such design flaws.

Compliance with NFPA 25 does not, as a matter of law, prevent a finding of negligence. Cf. Kane v. Hartz Mountain Indus., Inc., 278 N.J. Super. 129, 142 (App. Div. 1994), aff'd o.b., 143 N.J. 141 (1996). This Court has long held that "[t]he customs of an industry are not conclusive on the issue of the proper standard of care; they are at most evidential of this standard." Wellenheider v. Rader, 49 N.J. 1, 7 (1967). Such industry standards are not dispositive because "to allow [an industry] to set its own standard of conduct is tantamount to allowing it to set the limits of its own legal liability, even though those limits are below a level of care readily

18

attainable." Estate of Elkerson v. N. Jersey Blood Ctr., 342 N.J. Super. 219, 230 (App. Div.), certif. denied, 170 N.J. 390 (2001). Similarly, this Court held in Black v. Pub. Serv. Electric & Gas Co., 56 N.J. 63, 77 (1970), that a regulatory code or standard "is evidence of due care but is not conclusive on the subject." The question in that case was whether a utility company could be found negligent for failing to post danger signs even though the National Electric Safety Code, which had been adopted into the regulations of this State, did not require the posting of such warnings. Id. at 76-77. In holding that the utility could be found negligent, this Court explained that "safety codes represent minimum standards and do not establish the complete duty of the utility under all circumstances." Id. at 77.

The Legislature, however, directed the DCA to promulgate a uniform fire safety code, N.J.S.A. 52:27D-198(a), and also directed that the fire safety code must include requirements for fire suppression systems, N.J.S.A. 52:27D-198(b). The UFC, and the later adopted State Fire Prevention Code, are a piece of a comprehensive legislative effort to establish uniform codes for residential and commercial construction throughout the State. See, e.g., N.J.S.A. 40:55D-40.4 (directing adoption of uniform residential site improvement standards); N.J.A.C. 5:21 (promulgating uniform residential site improvement standards).

19

To that end, the UFC or the current State Fire Prevention Code provides the standard of care absent competent expert testimony that a standard of care other than the UFC or its successor is generally recognized in the fire prevention field.

Despite their compliance with NFPA 25, Mawhinney asserted that defendants' inspectors had a duty to satisfy a higher standard of care and report design flaws. Although Mawhinney is correct that defendants may be required to exercise care beyond the requirements of NFPA 25, his assertion that a reasonable sprinkler inspector would have identified design deficiencies represents an impermissible net opinion because he failed to provide objective support for that conclusion. Mawhinney's report referenced several other NFPA standards -- NFPA 13, NFPA 13R and its appendix, and NFPA 101 -- and also provided a brief discussion of a few fatal fires that may have been fueled by the storage of combustible materials in stairwells. None of those sources, however, address the role of sprinkler inspectors or lend support to Mawhinney's conclusion regarding what actions a reasonable inspector would have taken. Instead, they relate only to whether the hotel owner may have had a duty to install a sprinkler in the storage closet beneath the staircase.

In support of his conclusion that reasonable care required defendants' inspectors to identify and report the need for an additional sprinkler, Mawhinney relied upon nothing more than

20

his personal opinion about what the inspectors should have done. Thus, just as in Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001), "[p]laintiff[s'] expert offered no evidential support establishing the existence of a standard of care, other than standards that were apparently personal to himself."

During his deposition, Mawhinney stated that NFPA 25 has been adopted by most states in the country and acknowledged that it is generally recognized as the standard of care for sprinkler inspectors in New Jersey.  Despite that admission, he maintained that "NFPA 25 . . . [i]s just written wrong."  His report explained that NFPA 25 should have been drafted to include a requirement for reporting such deficiencies instead of "allow[ing] the inspector[s] to turn a blind eye to design flaws" while "conducting inspections of a limited scope." However, Mawhinney "failed to reference any written document or unwritten custom accepted by the [fire safety] community" to buttress that opinion.  Kaplan, supra, 339 N.J. Super. at 103.

Mawhinney also expressed his view that, although NFPA 25 recognizes that sprinkler maintenance inspectors may not have received the training necessary to identify design flaws, they should nevertheless be required to acquire such training.  Those conclusory statements, however, "lacked any foundation of the sort required for admissibility."  Pomerantz Paper Corp., supra,

21

207 N.J. at 374. Again, Mawhinny made "[n]o reference . . . to any written document, or even unwritten custom or practice." Kaplan, supra, 339 N.J. Super. at 103. "In this stark absence of supporting authority, [Mawhinney] provided only his personal view, which . . . 'is equivalent to a net opinion.'" Ibid. (quoting Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999)).

Having reviewed Mawhinney's report and deposition, it is clear that his opinion as to the applicable standard of care for sprinkler inspectors was a "mere conclusion" that "lack[ed] an appropriate factual foundation." Cf. Pomerantz Paper Corp., supra, 207 N.J. at 372-73. Therefore, we reject as an inadmissible net opinion Mawhinney's assertion that the exercise of reasonable care required defendants' inspectors to identify sprinkler system design flaws and report the need for an additional sprinkler.

D.

Absent Mawhinney's expert opinion to support a standard of care beyond that prescribed in the UFC, plaintiffs are unable to satisfy their burden of establishing the applicable standard of care and a breach of that standard. Plaintiffs thus fail to satisfy the elements of their negligence claim, and we hold that defendants are entitled to judgment as a matter of law. Rule 4:46-2(c).

22

IV.

For the reasons set forth above, we reverse the judgment of the Appellate Division and reinstate the orders of the trial court, granting defendants' motions for summary judgment and thus dismissing with prejudice plaintiffs' negligence claims against defendants Atlantic, Cintas, and FireMaster.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA, and ALBIN, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE PATTERSON did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-22/23/24                    SEPTEMBER TERM 2012

ON CERTIFICATION TO    Appellate Division, Superior Court

WAYNE DAVIS and IRENE LAVERNE
DAVIS, individually and on
Behalf of the ESTATE OF
COURTNEY DAVIS and MYLES
DAVIS, deceased,
          Plaintiffs-Respondents,

                    v.

BRICKMAN LANDSCAPING, LTD.,
d/b/a BRICKMAN LANDSCAPING,
GENERATED MATERIALS, LLC,
NORTHERN FIRE AND SAFETY,
TOWNSHIP OF FRANKLIN, COUNTY
OF SOMERSET, JOHN GOODMAN,
DENISE GOODMAN, JANET DEMARY,
ANN KINGSTON, CONNIE GORDON,
KAY STYLES-TIMMONS, WENDY
LAFORTUNE, and TYSHEE STYLES,
          Defendants,

                    and

ATLANTIC FIRE SERVICE, CINTAS
CORPORATION and MASTER
PROTECTION LP, d/b/a
FIREMASTER LP,
          Defendants-Appellants.

DECIDED          September 15, 2014
          Chief Justice Rabner          PRESIDING
OPINION BY          Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE/REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1