NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NOS. A-3472-15T3
 A-3610-15T3

DEWANE PARKER,

 Plaintiff-Respondent,

v.

ATLANTIC CITY BOARD
OF EDUCATION,

 Defendant-Appellant.

ATLANTIC CITY BOARD
OF EDUCATION,

 Plaintiff-Appellant,

v.

GARY ADAIR,

 Defendant-Respondent.

__________________________________

 Argued October 31, 2017 - Decided November 29, 2017

 Before Judges Gilson and Mayer.

 On appeal from Superior Court of New Jersey,
 Law Division, Special Civil Part, Atlantic
 County, Docket Nos. DC-4376-15 and DC-6094-
 15.1

 Tracy L. Riley argued the cause for appellant
 (Law Offices of Riley and Riley, attorneys;
 Ms. Riley and Rachel M. Conte, on the briefs).

 Arnold M. Mellk argued the cause for
 respondents (Mellk O'Neill, attorneys; Mr.
 Mellk, of counsel, Edward A. Cridge, on the
 briefs).

PER CURIAM

 The Atlantic City Board of Education (Board) appeals from

Special Civil Part orders dated March 1, 2016, and March 15, 2016,

granting summary judgment in favor of two Board employees, Dewane

Parker and Gary Adair. These matters involve the recovery of

money paid to Parker and Adair for their emergency shelter work

during Hurricane Sandy. Parker and Adair were both supervisors

who were paid annual salaries under individual contracts. The

Board contends that the motion judge erred in allowing Parker and

Adair to retain money paid to them for their work during the storm.

We affirm.

 During Hurricane Sandy, the City of Atlantic City (City)

asked to use the Board's schools as shelters for residents who had

not evacuated in advance of the storm. The Atlantic City Board

1
 We have consolidated these two appeals for purposes of this
opinion.

 2 A-3472-15T3
of Education agreed, and the City paid the Board to use the schools

as emergency shelters. The Board's superintendent of operations,

Barry Caldwell, testified at his deposition that he contacted

Parker about staffing the emergency shelters. Caldwell also

testified that when Board employees were asked to assist with the

Hurricane Sandy emergency shelters, he was aware they were not

obligated to perform the work. Moreover, Caldwell assured Parker

that those who worked during the storm would get paid for their

work, either by the Board or by the City.

 On the weekend preceding the storm, and for the duration of

the storm, Parker and other school staff prepared and staffed the

school buildings for use as emergency shelters. Schools were not

in session during this time period, and Parker and Adair were not

working in their capacity as school supervisors. There were no

issues related to the school facilities, such as leaking roofs or

broken windows, requiring repair to ensure that the school

buildings would be operational when school resumed.

 After the storm event, in accordance with Caldwell's

instructions, Parker and Adair submitted timesheets reflecting

their work at the emergency shelters. Caldwell approved the

timesheets. After payroll processed the timesheets, they were

returned to Caldwell or the superintendent of schools, who gave

 3 A-3472-15T3
them final approval. For their emergency shelter work, Adair was

paid $3,174.32 and Parker was paid $13,999.59.

 More than two years later, the New Jersey State Office of

Fiscal Accountability and Compliance (OFAC) investigated possible

overpayment to Board employees during Hurricane Sandy. In its

investigative report, OFAC concluded that "payments issued to

[administrators, such as Parker and Adair,] were not authorized

by the respective employment contracts." OFAC found that

administrators were not entitled to overtime pay as they were

exempt under the Fair Labor Standards Act (FLSA), 29 U.S.C.A.

§§ 201-219. OFAC recommended that the Board consider recovering

the money paid to Parker and Adair for their Hurricane Sandy work.

 In accordance with the OFAC report, the Board was instructed

to adopt a corrective action plan or appeal OFAC's findings within

thirty days. The Board elected to adopt a corrective action plan

whereby the Board demanded that all administrators, including

Parker and Adair, reimburse the money paid to them during Hurricane

Sandy. Parker and Adair declined to repay the money, but three

other administrators reimbursed the Board.

 The Board filed suit against Adair demanding reimbursement

of the money paid during Hurricane Sandy. Because Parker was

terminated as a Board employee, the Board unilaterally elected to

withhold $13,999.59 from his accrued vacation pay and paid Parker

 4 A-3472-15T3
the difference in the amount of $3,081.41. Parker had no notice

of the Board's action until he received his unused vacation pay.

Parker then sued the Board for withholding his accrued vacation

pay.

 The parties moved for summary judgment. The motion judge

granted summary judgment in favor of Parker and Adair on the bases

of quantum merit and unjust enrichment. Under the highly unusual

and unique circumstances of Hurricane Sandy, the motion judge

concluded that Parker and Adair were entitled to compensation

based upon their performance of extraordinary and unexpected work

with the expectation of remuneration. He also observed that the

Board was paid by the City for the emergency shelter work performed

by Parker and Adair, and concluded that the Board would be unjustly

enriched if it kept the City's payment and, simultaneously,

recouped the money it paid Parker and Adair.

 In Parker's case, the motion judge held that the Board's

unilateral decision to offset his vacation pay was a deprivation

of property without due process of law. In Adair's case, the same

motion judge specifically found that Adair's Hurricane Sandy work

was outside the scope of his employment contract.

 Our review of orders granting summary judgment is de novo,

and we apply the same standard employed by the trial court. Davis

v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014).

 5 A-3472-15T3
Accordingly, we must "consider whether the competent evidential

materials presented, when viewed in the light most favorable to

the non-moving party, are sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the

non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142

N.J. 520, 540 (1995). "[W]hen the evidence 'is so one-sided that

one party must prevail as a matter of law,' the trial court should

not hesitate to grant summary judgment." Ibid. (quoting Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512,

91 L. Ed. 2d 202, 214 (1986)).

 The Board argues the motion judge failed to consider the law

compelling it to respond to OFAC. The Board contends that N.J.A.C.

6A:23A-5.6 requires adoption of a corrective action plan. The

Board claims it was legally required to recoup the money paid to

Parker and Adair and the Board fulfilled its legal responsibilities

by filing suit against Adair and withholding Parker's accrued

vacation pay. However, the Board failed to cite any legal

authority in support of this argument. The OFAC report only

recommended the Board consider seeking reimbursement. Rather than

dispute OFAC's findings by filing an appeal, the Board decided to

pursue reimbursement from Parker and Adair as its corrective action

plan.

 6 A-3472-15T3
 The Board's primary argument is that it was effectively

compelled to recover the monies paid to Parker, Adair, and three

other administrators based on the OFAC report. The OFAC report,

however, was not a legal mandate to institute legal actions against

Parker and Adair. Instead, the report evaluated whether

administrators were entitled to overtime under their contracts.

OFAC concluded that administrators were not entitled to overtime.

That conclusion does not control in these cases because the

undisputed facts established that Parker and Adair were not doing

work as Board employees; rather, they were doing work outside

their contractual duties by assisting the City in setting up

shelters for people displaced by Hurricane Sandy.

 The Board next argues the motion judge erred because Parker

and Adair were not entitled to overtime wages under the FLSA and

New Jersey Minimum Wage Law (MWL), N.J.S.A. 34:11-56a to -56a38.

The Board misunderstands Parker and Adair's position. Parker and

Adair do not dispute that they are ineligible for overtime in

conjunction with their contractual job duties. Parker and Adair

argue that the work they performed during Hurricane Sandy was

extra-contractual and, thus, compensable under a quasi-contract

theory. Adair was in charge of maintaining the facilities for

educational use. Parker was head of security and truancy and

 7 A-3472-15T3
tasked with ensuring the safety of students and teachers as well

as monitoring student truancy.

 We concur with the motion judge's determination that Adair's

"labor during Hurricane Sandy [did] not fall within the scope of

his job description" and that Parker "bore the tremendous burden

of coordinating and supervising Hurricane Sandy relief," such that

Parker's and Adair's efforts were outside their employment

contracts. Parker's and Adair's job duties were clearly related

to school functions and the schools were closed when Parker and

Adair worked at the emergency shelters. Thus, Parker and Adair

were not performing work within their contractual scope during

Hurricane Sandy. The work performed by Parker and Adair under the

unique circumstances of the storm event constituted completely

different work – emergency shelter work – for a completely

different entity – the City.

 The Board also argues that the motion judge erred in denying

its motion based upon unjust enrichment. To prove a claim for

unjust enrichment, a party must demonstrate that the opposing

party "received a benefit and that retention of that benefit

without payment would be unjust." Iliadis v. Wal-Mart Stores,

Inc., 191 N.J. 88, 110 (2007) (quoting VRG Corp. v. GKN Realty

Corp., 135 N.J. 539, 554, (1994)). A quasi-contract theory

"requires that plaintiff show that it expected remuneration from

 8 A-3472-15T3
the defendant at the time it performed or conferred a benefit on

defendant and that the failure of remuneration enriched defendant

beyond its contractual rights." Ibid. (quoting VRG Corp., supra,

135 N.J. at 554).

 The Board was paid approximately $168,000 by the City for

emergency shelter services provided by Board employees, including

Parker and Adair. The Board has not reimbursed the City for any

sums it recouped from employees who worked at the emergency

shelters during Hurricane Sandy. There is nothing in the record

to indicate that the City has demanded reimbursement from the

Board or that the State has withheld school funding due to the

Board's payment of Parker and Adair. Consequently, we agree with

the motion judge that the Board has been enriched by the work of

Parker and Adair in satisfaction of their unjust enrichment claim.

 Nor did the Board dispute Parker's and Adair's expectation

of pay for their work during Hurricane Sandy. Parker was advised

by Caldwell that he would be paid for his time. Parker and Adair

kept track of the hours they worked, submitted their time to the

Board, and were issued checks for their work. Thus, the Board was

unjustly enriched by withholding Parker's accrued vacation pay,

and would be unjustly enriched if reimbursed by Adair.

 Based upon the undisputed and competent evidential materials,

involving a rare, 100-year storm event, the motion judge correctly

 9 A-3472-15T3
determined that the Board would be unjustly enriched if Parker and

Adair, who were working outside of their school contractual

obligations, were required to return the money paid for their work

at the emergency shelters.

 Affirmed.

 10 A-3472-15T3