```
┌─────────────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE                 │
│            APPROVAL OF THE APPELLATE DIVISION                │
│                                                             │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R. 1:36-3.    │
└─────────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1527-16T3

EUGENE VIDI and
FRED TAYLOR,

    Plaintiffs-Appellants,

v.

CUMBERLAND MUTUAL FIRE
INSURANCE COMPANY,

    Defendant-Respondent.

_____

        Argued May 8, 2018 — Decided July 5, 2018

        Before Judges Hoffman and Mitterhoff.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Docket No. L-
        2598-15.

        Anthony J. Diulio argued the cause for
        appellants (Law Offices of Jonathan Wheeler,
        PC, attorneys; Anthony J. Diulio, on the
        briefs).

        Richard A. Nelke argued the cause for
        respondent (Methfessel & Werbel, attorneys;
        Richard A. Nelke, of counsel and on the brief;
        Christian R. Baillie, on the brief).

PER CURIAM

Plaintiffs Eugene Vidi and Fred Taylor appeal from a November 15, 2016 order granting summary judgment in favor of Defendant Cumberland Mutual Fire Insurance Company ("Cumberland Mutual"). The matter arises from a first-party insurance coverage dispute involving two separate losses that occurred in brief succession. The trial court granted summary judgment based on a finding that plaintiffs failed to cooperate, in breach of a condition precedent to recovery under the pertinent policy. We reverse.

On or about February 1, 2014, plaintiffs' commercial building suffered a loss as a result of sewage backing up from a sewer/toilet drain in the floor of unit 21A. Plaintiffs immediately commenced remediation. On February 5, 2014, plaintiffs' building suffered a second loss, allegedly as a result of snow on the roof that melted and seeped into the building.

In February 2014, plaintiffs filed a claim for damages for both losses with Cumberland Mutual as their commercial carrier. Plaintiffs contracted with Paul Yemm, a public adjuster, to handle their losses. Thereafter, Cumberland Mutual assigned an independent adjuster, Thomas H. Ottoson of Ottoson Adjusting and Consulting Group, Inc. ("Ottoson"), to adjust the claim. On February 19 or 20, 2014, Ottoson inspected plaintiffs' property. At the time of the inspection, plaintiffs had commenced mitigation as required by their policy. Defendant concedes that although the

mitigation impaired somewhat its ability to assess the loss, the mitigation of the sewage was not a breach of the insured's duty to cooperate.

The subject property is a strip store center with three commercial first floor units and a second floor apartment. A February 25, 2014 confidential Property Claim Report noted that at the time of the inspection, all three commercial units were vacant and unoccupied. Defendant Cumberland subsequently requested documents from plaintiffs to conduct its claim investigation. Specifically, Ottoson requested a copy of the lease agreements for the last known tenants on all four commercial spaces. Ottoson also requested that the two losses be separated and distinguished from one another, with estimates, photographs, and proofs of loss attributable to each loss presented. Finally, Ottoson requested that the insureds appear for a statement with regard to occupancy and the circumstances of the losses. After sending five letters without receiving any response, defendant denied both claims.

Plaintiffs' policy under the CP 00 10 06 07 Building and Personal Property Coverage Form provides in relevant part:

> E. Loss conditions
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . . .

3. Duties In the Event of Loss or Damage
a. You must see that the following are done in the event of loss or damage to Covered Property:

. . . .

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
(6) As often as may be reasonably required, permit us to inspect the property providing the loss or damage and examine your books and records. Also, permit us to take samples of damage and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

. . . .

(8) Cooperate with us in the investigation or settlement of the claim.

Furthermore, plaintiffs' policy provides at the CP 00 90 07 88 Commercial Property Conditions form:

A-1527-16T3

D. LEGAL ACTION AGAINST US
No one may bring a legal action against us under this Coverage Part unless:
1. There has been full compliance with all of the terms of this Coverage Part . . . .

The plaintiffs' policy also provides in relevant part, at CP 00 10 06 07 Building and Personal Property Coverage Form:

6. Vacancy
a. Description of Terms
(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.
(b) When this policy is issued to the owner or general lessee of a building, building mean the entire building. Such building is vacant unless 31% of its total square footage is:
(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or
(ii) Used by the building owner to conduct customary operations.
(2) Buildings under construction or renovation are not considered to be vacant.
b. Vacancy Provisions
If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
(a) Vandalism;

A-1527-16T3

(b)  Sprinkler leakage, unless you have
     protected the system against
     freezing;
(c) Building glass breakage;
(d) Water damage;
(e) Theft; or
(f) Attempted theft.
(2)  with respect the Covered Causes of
Loss other than those listed in b.(1)(a)
through b.(1)(f) above, we will reduce the
amount we would otherwise pay for the loss or
damage by 15%.

Based the adjuster's observation that the three commercial units were vacant at the time of the inspection, the carrier was understandably interested in finding out how long the units had been vacant, as that information may have impacted on the determination of what if any coverage was due for the losses. On July 21, 2014, having received no further communication from plaintiffs, Cumberland Mutual sent a letter denying coverage, citing a multitude of policy provisions, including the "condition precedent to suit" language, and the "insured's duties after a loss" section.

Plaintiffs filed suit on July 6, 2015. After plaintiffs failed to respond to discovery requests, Cumberland Mutual filed a motion to dismiss pursuant to Rule 4:23-5(a)(1). On May 13, 2016, the court entered an order dismissing plaintiff's complaint without prejudice for failure to answer interrogatories. In response, plaintiffs provided a loss statement. The production

was twenty-six months after the initial request for documents and information; twenty-two months after the claim was denied; and ten months after the complaint was filed. On June 14, 2016, a consent order to reinstate plaintiff's complaint was executed by plaintiff's counsel and counsel for Cumberland Mutual. On August 11, 2016, the court extended discovery for ninety days to September 20, 2016.

On October 5, 2016, Cumberland Mutual filed a motion for summary judgment. Defendant's motion was granted without prejudice, in error, on November 4, 2016. On November 15, 2016, the court issued a corrected order dismissing the claim with prejudice. The trial court indicated that summary judgment was warranted because

> I think that the problem that the Court has here is that there hasn't been any evidence from the plaintiff that they've complied with the conditions of the policy to cooperate in the investigation. I've . . . nothing to view . . . in [the] light most favorable to the non-moving party other than a statement saying that we complied, which compliance was after suit was filed. Which the policy, I think is pretty clear and unambiguous, that you have to cooperate before you file suit. The record is just void of any evidence of compliance at all. So the Court has nothing to assess or even view in [the] light most favorable to the non-moving party.

This appeal ensued.

On appeal, plaintiffs argue that there were genuine issues of material fact concerning whether they willfully refused to provide the requested information to the defendant and whether the claim was properly denied. Plaintiffs contend these fact issues should have precluded the trial court's grant of summary judgment.

On appeal from summary judgment orders, we use a de novo standard of review and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Accordingly, we determine whether the moving parties have demonstrated that there are no genuine disputes as to any material facts and, if so, whether the facts, viewed in the light most favorable to the non-moving party, entitled the moving parties to judgment as a matter of law. R. 4:46-2(c); Davis, 219 N.J. at 405-06; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

This is a first-party breach of contract claim against plaintiff's carrier. In the first-party context, coverage may be forfeited upon a finding that there was a material and willful breach of the insured's duty to cooperate with the insurer's investigation that materially diluted the insurer's ability to evaluate the claim. DiFrancisco v. Chubb Ins. Co., 283 N.J. Super. 601, 612-13 (App. Div. 1995). An insured's duty to cooperate encompasses the obligation to appear for an examination under oath

(EUO) if requested and to provide documentation verifying the loss. Id. at 611. We recognized in DiFrancisco that "delays in obtaining requested information frequently result in 'a material dilution of the insurer's rights.'" Ibid.

DiFrancisco involved a claim for alleged theft of personal property. Under those facts, we held that due to the suspicious nature of the claim, the insured's willful refusal to provide personal financial documents was a material breach of the contract that materially diluted the insurance company's ability to investigate the claim. Accordingly, we affirmed the summary judgment dismissing the claim.

In this case, there is no dispute that plaintiffs did not promptly respond to the insurance company's requests for documents including information about vacancies. However, the trial court made no findings on the issue whether plaintiffs' failure materially diluted the insurance company's ability to investigate the claim. Nor has defendant articulated in its brief or at oral argument how its rights were materially diluted by the admittedly long delay in obtaining the documents it sought. Instead, both the court and defendant rely solely on the fact that plaintiffs did not cooperate in the initial investigation of the claim. We find it troubling that the carrier waited so long to invoke the non-cooperation clause as a basis for dismissal. This lawsuit has

9

been pending since July 6, 2015. After plaintiffs provided interrogatory answers, Cumberland Mutual consented to the reinstatement of plaintiff's complaint. At the request of the parties, the court extended discovery for ninety days to September 20, 2016. Depositions have been conducted and presumably, substantial legal fees have been incurred. It was not until October 5, 2016 that Cumberland Mutual filed its motion for summary judgment. It appears discovery has yielded sufficient information enabling Cumberland Mutual to argue that certain exclusions under the policy apply.[1]

In the absence of any findings by the trial court that Cumberland Mutual's rights were materially diluted by plaintiffs' delay in producing documentation to verify the losses, we are constrained to reverse and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Cumberland Mutual's alternate grounds for summary judgment based on policy exclusions are preserved on remand as they were not addressed by the trial court.

A-1527-16T3