FRANK WELLENHEIDER, PLAINTIFF-APPELLANT, v. WIL-
LIAM H. RADER, INDIVIDUALLY AND T/A HENRY
RADER & SON, DEFENDANT-RESPONDENT AND CROSS-
APPELLANT, AND BARTLEY CONTI, WILLIAM CONTI
AND FRANK CONTI, INDIVIDUALLY, AND T/A CONTI
BROTHERS ROOFING, JOINTLY, SEVERALLY OR IN
THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.

Argued December 20, 1966—Decided March 6, 1967.

*Mr. Seymour Margulies* argued the cause for plaintiff-appellant, Frank Wellenheider (*Messrs. Schwartz, Horowitz & Krivitzky,* attorneys; *Messrs. Levy, Lemken & Margulies,* of counsel; *Mr. Seymour Margulies,* on the brief).

*Mr. Frank Paglianite* argued the cause for defendant-respondent and cross-appellant, William Rader, individually and t/a Henry Rader & Son.

*Mr. H. Curtis Meanor* argued the cause for defendants-respondents, Bartley Conti, William Conti and Frank Conti, individually, and t/a Conti Brothers Roofing (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys).

The opinion of the court was delivered by
PROCTOR, J. This is a personal injury negligence suit. Plaintiff Frank Wellenheider recovered a jury verdict against

defendant William H. Rader and defendants Bartley Conti, William Conti and Frank Conti, partners (Conti). Motions by defendants for judgments *n. o. v.* and in the alternative for new trials were denied. On appeal the Appellate Division determined that there was no evidence of negligence by Conti, and therefore plaintiff's claim for damages and Rader's crossclaim for contribution were dismissed. As to Rader the Appellate Division thought that there was sufficient evidence of negligence, but reversed and remanded for new trial because of error in the trial court's charge. We granted certification on petition of plaintiff against both defendants and on the cross-petition by Rader against Conti. 47 *N. J.* 421 (1966).

At the request of American Shuffleboard Company in March 1961 Rader, a roofing contractor, inspected the roof on its one-story building in Union City and recommended that part of the roof be resurfaced. During his inspection he looked inside the building at the ceiling beneath the roof to be repaired to check for leaks and to observe the condition of the ceiling. American Shuffleboard contracted for this work with Rader. As was his regular arrangement for some 10 or 15 years, Rader subcontracted the resurfacing part of the job to Conti and kept for himself only the sheet metal work. Of the total contract price of $1,095 Conti was to get $970 and Rader $125. The job was to be done when Conti had time. On April 10 Conti informed Rader of its availability to do the work the next day.

On the morning of April 11, 1961 Conti arrived at the building ready to begin work. Rader was there to show Conti what part of the roof was to be worked on. Conti made no inspection of the ceiling and conditions inside, and Rader made no comment about them to Conti. Conti had five men on this job who hoisted some 50 rolls of tar paper weighing 60 to 65 pounds each onto the roof and then began to drop, roll, and hammer these into place.

On that day plaintiff was employed by American Shuffleboard and was working in the building whose roof was being

repaired. He was hand-finishing a shuffleboard. About 8:15 A. M. plaintiff began to hear noises of hammering and the falling of heavy objects on the roof and saw some dust coming from the ceiling. About 9:15 A. M. he heard a creaking sound, and immediately thereafter he was struck and injured by a heavy spool-like wooden disc five or six feet in diameter which fell from the ceiling.

The disc was of unknown utility. It had been in place for as long as any witness could remember. In the pretrial order it was stipulated that "the disc had been nailed into the ceiling by plaintiff's employer many years before the date of the accident." Rader did not notice it when he made his inspection in March.

Plaintiff's expert, a civil engineer, testified that the vibrations of the roof from the work being done by Conti caused the disc to fall. He also testified that the customs of the roofing industry would require an inspection of the ceiling under the roof to be repaired by either the general contractor or the subcontractor or both.[1] His testimony was not consistent. At times he seemed to indicate that the primary duty to inspect according to customs of the trade was on the general contractor, and at other times he seemed to say that the primary duty rested on the man who was actually doing the work.[2] He further testified that a roofer making a proper inspection would have noticed the unusual disc, and the closer look demanded by the unusual character of this object would

---

[1] *E. g.* "Whoever does the job bears the responsibility to see that it is done properly. If the general contractor has turned this job over to a sub-contractor, he, from an engineering standpoint, is not relieved of responsibility either. It will be that if both of them do not inspect the premises, we would not allow either one of them on the job on subsequent jobs of ours."

[2] *E. g.* "Counsellor, the man who is actually doing the job does have the responsibility to look at the ceiling in addition. There is no question. From an engineering standpoint. We expect the man, the subcontractor doing the actual work, to look underneath and see whether anything had to be removed. We would also expect the general contractor to assume the same responsibility."

have revealed that it was not fastened to the ceiling securely enough to withstand the normal vibrations of a roofing job.

Rader, himself an experienced roofer, and his expert both testified that a roofer has no general obligation to inspect the inside of the building to be worked on, and he looks at the ceiling under the roof only to check for leaks or on specific request by the owner. Frank Conti and Conti's expert also testified that according to usual customs of the roofing industry there was no duty to inspect the ceiling. They further said that such duty to inspect as there was rested on the general contractor, the man who agreed with the owner to do the work; and the subcontractor could rely on the general contractor to make such inspection as was necessary and inform the subcontractor of any unusual condition.

Plaintiff's theory was that both defendants owed him, a person who worked in the building, a duty to make a reasonable inspection of the ceiling and general conditions of the area under the roof to be worked on, and that such an inspection would have revealed that the disc was not fastened securely enough to withstand the vibrations of a normal roofing job. Plaintiff also urged that the actual resurfacing by Conti was done negligently, but he offered no proof tending to show this. The trial judge rejected the theory, and plaintiff abandoned it at trial and on this appeal. The jury was charged that it could not find Conti negligent for the manner in which it performed the actual resurfacing.

The Appellate Division determined that the expert testimony at the trial established that a subcontractor could rely on a competent general contractor to make such inspection as would be proper in the circumstances and to inform the subcontractor of any untoward conditions. This being so, there was no duty on Conti to make its own inspection, and therefore no evidence that it was in any way negligent. The Appellate Division dismissed both plaintiff's claim against Conti and Rader's crossclaim for contribution. As to Rader the court thought that there was sufficient evidence of negligence to go to the jury, but reversed and remanded for new

trial because of error in the trial judge's charge as to the duty of Rader.

## I As to Conti

██ The motion for judgment which the Appellate Division granted in favor of Conti requires us to assume that all of plaintiff's evidence together with all reasonable inferences therefrom is true. *Melone v. Jersey Central Power & Light Co.*, 18 *N. J.* 163 (1955). Therefore, if any evidence in the case is sufficient to show that Conti was negligent, the motion for judgment cannot be granted.

Our review of the record indicates numerous inconsistencies by plaintiff's expert as to the customs of inspection in the roofing trade. However, as noted in the facts, some of his testimony tended to show an industry custom putting a duty of making an inspection of the ceiling and interior conditions on the subcontractor when this person is "the man who is actually doing the job." This shows a duty to inspect by Conti, and the evidence in the case considered together with this duty presents a fact controversy sufficient to defeat a motion for judgment as a matter of law.

██ Further, proof of an industry custom is not dispositive of the question of duty. The standard of conduct is reasonable care, that care which a prudent man would take in the circumstances. The customs of an industry are not conclusive on the issue of the proper standard of care; they are at most evidential of this standard. *Shafer v. H. B. Thomas Co.*, 53 *N. J. Super.* 19, 22–25 (*App. Div.* 1958); and see *Adams v. Atlantic City Electric Co.*, 120 *N. J. L.* 357, 363 (*E. & A.* 1938). Dean Prosser puts the principle as follows:

"Even an entire industry, by adopting such careless methods to save time, effort or money, cannot be permitted to set its own uncontrolled standard * * *. And if the only test is to be what has been done before, no industry or group will ever have any great incentive to make progress in the direction of safety * * *. Much the better view, therefore, is that of the great majority of the cases, that every custom is not conclusive merely because it is a custom, and that it must meet the challenge of 'learned reason,' and be given only the

evidentiary weight which the situation deserves. It follows that where common knowledge and ordinary judgment will recognize unreasonable danger, what everyone does may be found to be negligent; and that there will be extreme cases where it is so clearly negligent in itself that it may even be excluded from evidence." Prosser, *Torts* § 33, 170 (*3d ed.* 1964).

And see *Texas & P. R. Co. v. Behymer,* 189 *U. S.* 468, 23 *S. Ct.* 622, 47 *L. Ed.* 905 (1903) (Justice Holmes) ; *The T. J. Hooper,* 60 *F.* 2d 737 (2 *Cir.* 1932) (Judge Learned Hand), *cert.* denied *sub nom. Eastern Transp. Co. v. Northern Barge Corp.,* 287 *U. S.* 662, 53 *S. Ct.* 220, 77 *L. Ed.* 571 (1932).

 In the present case plaintiff provided expert testimony that a reasonable inspection by a roofer would have disclosed that the disc was not fastened to the ceiling securely enough to withstand the vibrations caused by a normal roofing job. The jury, by using its own "common knowledge and ordinary judgment" to evaluate the circumstances, could have concluded that regardless of industry custom the exercise of reasonable care required the subcontractor Conti, which was to do the work, to make its own inspection for conditions dangerous to persons inside the building. The jury was so charged, and we think this part of the charge was proper.

We therefore hold that there was sufficient evidence of negligence by Conti to take this issue to the jury.

## II

In his summation counsel for Rader argued that the sole cause of the accident was the negligent installation and maintenance of the disc on the ceiling by American Shuffleboard. Counsel for Conti also contended that the real fault for the accident rested on the person who put the disc on the ceiling. Plaintiff's counsel in his summation said that if defendants really believed some other person was at fault, they should have found and brought in this other person as an additional defendant. Defendants immediately objected to this line of argument on the grounds that neither plaintiff's employer nor a co-employee could be sued in negligence. The trial judge

denied the objection saying that plaintiff could comment on the failure of defendants to find and bring in another person as a third-party defendant. After this ruling plaintiff's counsel continued as follows:

"As I started to tell you, we started suit against certain people. If the defendants think that somebody else should be brought in, whether I don't want to bring him in or, maybe, we didn't know about it, then it is up to them to bring this man in as a third party defendant * * *. I haven't heard one word yet of a failure to locate this man who may or may not even been with Shuffleboard. That was their obligation. That was their duty. But you can't come into here on the last day of the trial and try to give you another red herring. It's that man's fault. Without, at least, giving you a little background that you couldn't find the man."

Both defendants also requested supplemental charges to the jury that according to law neither American Shuffleboard nor a co-employee of plaintiff could be sued in negligence for plaintiff's injuries. These requests were denied.

The trial judge on motions after trial said that the remarks of plaintiff's counsel were not improper because the disc might have been installed by some third party before American Shuffleboard came into possession of the premises. The Appellate Division felt that although the remarks should not be repeated on retrial, their "generality and vagueness" prevented them from being prejudicial.

■ Defendants correctly stated the law which they urged as the grounds for their objection and supplemental charge. Their claim for contribution or indemnification from Shuffleboard was precluded by the rules that an employee covered by workmen's compensation cannot sue his employer in negligence, *N. J. S. A.* 34:15–8, and see *Farren v. N. J. Turnpike Authority*, 31 *N. J. Super.* 356, 360–361 (*App. Div.* 1954), nor can the employee sue a co-employee. *N. J. S. A.* 34:15–8, and see *Konitch v. Hartung*, 81 *N. J. Super.* 376 (*App. Div.* 1963), certif. denied 41 *N. J.* 389 (1964).

Uncontradicted testimony in the case showed that the building was constructed for and maintained by American

Shuffleboard, and that it had been the sole occupant of the premises. Further, in the pretrial order plaintiff stipulated that "the disc had been nailed into the ceiling by plaintiff's employer many years before the date of the accident."

The trial judge was mistaken in his belief that some third party could have put up the disc before the occupancy by Shuffleboard, and his ruling permitting the remarks was error. We do not agree with the Appellate Division that the remarks were vague and general. The only reasonable effect which these remarks could have had in the context of the evidence in the case was to link the "man" of the remarks with an employee of Shuffleboard. The jury might well have believed that the failure of defendants to bring in American Shuffleboard or one of its employees as a third-party defendant showed that Shuffleboard or one of its employees was not in any way negligent. Defendants strongly urged that the sole proximate cause of the accident was faulty installation and maintenance of the disc by Shuffleboard. The improper remarks of plaintiff's counsel undercut this contention and allowed the jury to believe that if any evidence that Shuffleboard was negligent existed, Shuffleboard would have been made a third-party defendant; cf. *Capaldo v. Reimer,* 40 *N. J.* 269, 275–276 (1963).

Moreover, when a defendant asserts that another person is the *sole* cause of the accident without any claim over against that person based upon the contingency that the impleading defendant is also liable, he cannot for this reason join the other person as a third-party defendant and it is therefore improper for the plaintiff to comment on his failure to do so. The authorization to make another person a third-party defendant rests on a claim for contribution or indemnification based upon the contingency that the impleading defendant may be found liable to the plaintiff (*R. R.* 4:14–1) and not on the alleged sole liability of the third person to the plaintiff.

We hold therefore that allowing plaintiff's counsel over timely objection to comment on the defendants' failure

to sue as a third-party defendant a person who the jury would likely believe was an employee of American Shuffleboard, and the trial court's subsequent failure to give supplemental instruction to cure the effects of this comment, together constituted such error as to necessitate a new trial as to both defendants.

### III As to Rader.

We agree with the Appellate Division that there was sufficient evidence of negligence by Rader to take this issue to the jury. The testimony of plaintiff's expert showed an industry custom of visual inspection by the general contractor of the interior under the roof to be worked on. Further, as discussed above, the jury might have found that under the circumstances of the case the standard of reasonable care required the general contractor to make such an inspection regardless of industry custom.

The Appellate Division determined that the following part of the trial judge's charge was erroneous in that it took from the jury the question of whether Rader had in fact such physical control over the job site that his duty of reasonable care required him to make an inspection. The trial judge instructed the jury that:

"The liability of Rader, who was acting in the manner of a contractor in this case, to persons working in and around the job site on the premises of another is founded on the assumption that the owner of the premises has placed the contractor in physical control of the job site. By virtue of this control Rader is under a duty to exercise reasonable care to maintain the premises; that portion of it over which he has control in a reasonably safe condition. Rader must exercise reasonable care for the safety of persons working in and around the job site, to see that they are not injured by any dangerous conditions actually known to him and, likewise, of a dangerous condition of which the defendant William Rader, by the exercise of reasonable care and by the making of a proper inspection could have discovered."

The substance of this part of the charge is that Rader was given some control over the premises and therefore was put

under a duty to use reasonable care for the safety of persons working in and around the job site.

The Appellate Division thought that the trial judge took the above-quoted language from *Schwartz v. Zulka*, 70 *N. J. Super.* 256 (*App. Div.* 1961), modified on other grounds *Schwartz v. North Jersey Building Contractors Corp.*, 38 *N. J.* 9 (1962) where a general contractor in physical control of a job site was held to have a duty to exercise reasonable care for the safety of invitees analogous to the duty of a landowner. 70 *N. J. Super.*, at *pp.* 261–262. In the present case unlike *Schwartz v. Zulka* there was a fact controversy as to whether Rader had such physical control. Although he was the general contractor and was present on the day of the accident, he said it was only to point out the roof to be repaired; further, his testimony indicated that as part of their regular working agreement Conti assumed full control of the resurfacing work.

Since we have determined that it is necessary to remand this case to the trial court, we need not decide whether this instruction was prejudicial. We note, however, that premising the duty of Rader to make an inspection on actual physical control assumed as true a circumstance in controversy. Rader's duty to inspect, if any, turned not on his control of the job site but on his assumption of responsibility in making the contract. If at the retrial the facts are the same, the judge should merely let the jury decide whether Rader had a duty to inspect, and if so whether his inspection met his duty of reasonable care.

For the foregoing reasons the judgment of the Appellate Division as to Conti is reversed and as to Rader is affirmed, and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

*For affirmance in part and reversal in part*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.