# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4748-17T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
R.A., SVP-194-01.

_____

Argued March 19, 2019 – Decided April 29, 2019

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-194-01.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant R.A. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

R.A. appeals from a June 11, 2018 judgment involuntarily civilly committing him to the Special Treatment Unit (STU) as a sexually violent

predator in accordance with the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. After reviewing the record in light of the contentions advanced on this appeal, we affirm.

I.

Appellant has a history of engaging in sexually violent offenses. In June 1988, he was charged with forcibly raping a woman. While released on bail from that charge, he was charged with raping a thirteen-year-old girl. Appellant pled guilty to fourth-degree criminal sexual conduct, N.J.S.A. 2C:14-3(b), in connection with the first incident. He pled guilty to third-degree aggravated criminal sexual conduct, N.J.S.A. 2C:14-3(a), in connection with the second incident.

In December 1995, appellant was charged with physically and sexually assaulting his former girlfriend. He pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c). Appellant was then sentenced to eight years in prison, with five years of parole ineligibility.

In 2001, the State filed a petition to civilly commit appellant under the SVPA. Following an evidentiary hearing, the trial court granted that petition and ordered appellant to be civilly committed and to receive treatment at the STU. Thereafter, appellant's commitment was periodically reviewed and

A-4748-17T5

continued until 2016. Appellant twice appealed from judgments continuing his civil commitment, but both times we affirmed. In re Civil Commitment of R.J.A., No. A-2089-02 (App. Div. June 27, 2005); In re Civil Commitment of R.J.A., No. A-5713-06 (App. Div. Feb. 5, 2008).

In June 2016, appellant was conditionally discharged from the STU. His discharge was reviewed and continued by orders entered in September 2016 and January 2017.

In October 2017, while on conditional discharge, appellant was charged with fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). The alleged victim, M.W., was the then nineteen-year-old daughter of appellant's girlfriend. M.W. reported that appellant placed his hand near her vagina area and asked if she would like him to massage her nipples. Appellant denied those allegations and asserted that M.W. had come to his apartment and had touched his inner thigh while he was playing a video game. Appellant also contended that he rejected that advance and yelled at M.W.

Based on appellant's charge for criminal sexual contact, on October 10, 2017, the State moved to return appellant to the STU and for a hearing to determine whether his conditional discharge should be vacated. By an order entered on October 11, 2017, the trial court granted that application and directed

that appellant was to be returned to the STU when he was released from his arrest on the criminal charge.

Following a jury trial, which took place in April 2018, appellant was found not guilty of criminal sexual contact in connection with the incident involving M.W. Thereafter, the State sought to continue appellant's civil commitment, contending that he had violated the conditions of his discharge and he posed a high risk of engaging in sexually violent behavior if released, even on conditions. Accordingly, in May 2018, an evidentiary hearing was conducted in the Law Division.

At that hearing, the State presented testimony from the mother of M.W. and two experts: Dr. Deborah Roquet, a psychologist, and Dr. Alberto M. Goldwaser, a psychiatrist. The State also submitted numerous documents into evidence, including an STU intake form dated April 19, 2018, documenting an admission by appellant that he had used cocaine in the past year. Appellant presented expert testimony from a psychologist, Dr. Christopher Lorah, and Hawaiian Thompson-Epps, who prepared a proposed conditional discharge plan for appellant.

Dr. Roquet and Dr. Goldwaser were both accepted as experts in their respective fields of psychology and psychiatry. Both doctors evaluated

appellant and testified concerning their findings. The State's experts testified that appellant suffered from a mental abnormality that predisposed him to commit acts of sexual violence. Those experts also opined that appellant was highly likely to engage in acts of sexual violence if not confined and should not be released on conditions.

Dr. Roquet and Dr. Goldwaser explained the basis for their opinions by citing to stressors that built up while appellant was on conditional discharge. Those stressors included unstable housing issues, unstable personal relationships, an inability to maintain employment, and health issues. The doctors then pointed out that those stressors caused appellant to violate the terms of his conditional discharge by staying overnight twice at his girlfriend's home and using cocaine.

The State's experts also emphasized that appellant did not adequately address the stressors he was facing in treatment during his conditional discharge. For example, the doctors noted that appellant did not voluntarily raise the incident with M.W. in his counseling while on discharge. Dr. Roquet scored appellant at a seven on a Static-99R actuarial tool, which corresponded to the "well above average" risk group. Dr. Goldwaser scored appellant at six on the

5

same Static-99R actuarial tool, which also corresponded to the "well above average risk" group.

Dr. Lorah, who testified on behalf of appellant, was accepted as an expert in the field of psychology. Dr. Lorah acknowledged that appellant posed a risk of reoffending, but opined that that risk could be managed on conditional discharge.

After considering all of the evidence presented at the hearing, the trial judge civilly committed appellant finding that the State had presented clear and convincing evidence of the elements necessary for a civil commitment. The trial judge reviewed appellant's criminal record and found that there was no dispute that he had been convicted of sexually violent offenses. The judge also found that there was no dispute among the three experts that appellant suffered from a mental abnormality that predisposed him towards sexual violence.

The court then relied on the expert testimony presented by Dr. Roquet and Dr. Goldwaser and found that there was clear and convincing evidence that defendant "would be highly likely to engage in acts of sexual violence within the reasonable foreseeable future if released." In accepting the testimony of Dr. Roquet and Dr. Goldwaser, the trial court found that both doctors relied on sources and information that were regularly relied upon by experts in their

respective fields. The court also found that both doctors were credible. In contrast, the court rejected and did not accept the opinion of Dr. Lorah that appellant could comply with conditions if he was conditionally discharged. Accordingly, in a judgment dated June 11, 2018, the trial court ordered appellant to be committed to the STU for care and treatment and scheduled a review hearing to be conducted in June 2019.

## II.

On this appeal, appellant makes two principal arguments, which he articulates as follows:

POINT I – THE TRIAL COURT ERRED WHEN IT COMMITTED R.A. WITHOUT REQUIRING THE STATE TO PRESENT CLEAR AND CONVINCING EVIDENCE THAT HE IS "HIGHLY LIKELY" TO SEXUALLY REOFFEND.

A. This Court Must Reverse Because R.A. Was Committed for Being Alone with a Woman When Nothing in His Discharge Order Barred Him from Being Alone with a Woman.

B. R.A. Was Wrongfully Committed Based on the Trial Judge's Improper Assumption that the Jury's Acquittal Was Either In Error or that R.A. Could Not Deal With His Anger Because He Yelled Out When His Fiancee's Adult Daughter Touched His Inner Thigh.

7

C.	This Court Must Reverse Because No Expert Testified that R.A.'s Two Overnight Stays at His Fiancee's House Meant that He Was Highly Likely to Sexually Reoffend.

D.	The Fact That R.A.'s Medical Condition Caused Him to Take a Break from Employment Does Not Warrant His Commitment in the STU.

E.	R.A. Denies Drug Use and Had Negative Drug Screens, But Even if He had a One-Time Drug Use, the State Failed to Prove This Made Him Highly Likely to Sexually Reoffend.

POINT II – The State Doctors Only Offered Inadmissible Net Opinion When They Found R.A. At High Risk to Sexually Reoffend.

Having reviewed the record and law, we are not persuaded by these arguments.

To civilly commit an individual as a sexually violent predator, the State must establish three elements by clear and convincing evidence:

> (1) that the individual has been convicted of a sexually violent offense, (2) that he [or she] suffers from a mental abnormality or personality disorder, and (3) that as a result of his [or her] psychiatric abnormality or disorder "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]"
>
> [In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (citations omitted) (first citing N.J.S.A. 30:4-

27.26; and then quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).]

The same standard applies when the State seeks to recommit a person who was given a conditional discharge. In re Civil Commitment of E.D., 183 N.J. 536, 551 (2005). In that regard, our Supreme Court has stated "for the State to cause the recommitment of a committee who has been conditionally discharged, the State must establish by clear and convincing evidence that the committee is highly likely not to control his or her sexually violent behavior and will reoffend." Ibid.

The SVPA provides standards and procedures that govern both the conditional discharge from civil commitment and when a person may be recommitted. Section 27.32(c) of the SVPA sets forth the standard and procedures for conditional discharge from commitment. N.J.S.A. 30:4-27.32(c)(1). That statute provides that a person can be conditionally discharged when a "court finds that the person will not be likely to engage in acts of sexual violence because the person is amenable to and highly likely to comply with a plan to facilitate the person's adjustment and reintegration into the community[.]" Ibid. Our Supreme Court has described that standard as the "other side of [the] coin" to the third prong of the sexually-violent-predator test. W.Z., 173 N.J. at 130.

Once conditionally discharged, a person may be re-committed under the procedures outlined in subsection 27.32(c)(3) of the SVPA:

> A designated staff member on the person's treatment team shall notify the court if the person fails to meet the conditions of the discharge plan, and the court shall issue an order directing that the person be taken to a facility designated for the custody, care and treatment of sexually violent predators for an assessment. The court shall determine, in conjunction with the findings of the assessment, if the person needs to be returned to custody and, if so, the person shall be returned to the designated facility for the custody, care and treatment of sexually violent predators. The court shall hold a hearing within 20 days of the day the person was returned to custody to determine if the order of conditional discharge should be vacated.

> [N.J.S.A. 30:4-27.32(c)(3).]

Certain due process protections apply to recommitment hearings. E.D., 183 N.J. at 548. In that regard, "the person must be given written notice of each alleged violation sufficiently in advance of the court proceeding to provide a reasonable opportunity to prepare a defense." Ibid. As already noted, at the recommitment hearing, "the State must establish by clear and convincing evidence that the committee is highly likely not to control his or her sexual violent behavior and will reoffend." Id. at 551.

"The scope of appellate review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58

A-4748-17T5

(1996)).  "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).  When a trial judge's findings are supported by sufficient credible evidence in the record, they should not be disturbed.  Id. at 175 (citing State v. Johnson, 42 N.J. 146, 162 (1964)).

Here, there was substantial credible evidence supporting each of the trial judge's findings that appellant should be recommitted.  There were no disputes concerning the first two prongs of the test.  Appellant had been previously convicted of a sexually violent offense.  All three experts who testified at the recommitment hearing agreed that appellant suffered from a mental abnormality or personality disorder that predisposed him towards sexual violence.  Accordingly, the principal contention at the recommitment hearing was whether the State presented clear and convincing evidence that appellant is highly likely not to control his sexually violent behavior and will reoffend.

As noted earlier, the trial court relied on the expert testimony of Dr. Roquet and Dr. Goldwaser and found that it was highly likely that appellant would not control his sexually violent behavior if he was released.  In that regard, the trial court's finding is supported by evidence in the record and we

discern no basis to disturb that finding. See R.F., 217 N.J. at 174 (explaining that appellate courts give deference to trial judges concerning the third prong of the civil commitment test).

Appellant argues that the trial court erred because there was no clear and convincing evidence that appellant is highly likely to sexually reoffend. In making that argument, appellant takes issue with some of the factors discussed by the trial court. For example, he argues that he did not violate the conditions of his discharge by being alone with M.W. He also contends that the trial judge improperly ignored the jury verdict acquitting appellant of the charge of criminal sexual contact with M.W. He goes on to argue that his violations of discharge conditions by staying overnight at his girlfriend's home, his failure to maintain stable employment, and his use of cocaine do not warrant his recommitment.

We reject these arguments because they fail to recognize the basis for the trial court's decision. The trial court discussed a number of incidents that occurred while appellant was on conditional discharge. The court did not, however, rely on any one particular incident in making its findings. Instead, the court relied on the testimony of the two State experts who described various stressors that resulted in their assessment that appellant would be highly likely to engage in sexual violence if released, and even if released on conditions. In

12

reaching that conclusion, the trial court did not reject the jury verdict acquitting appellant of his most recent charge. Indeed, the trial court expressly stated that it recognized that verdict and did not rely solely on the charge.

Appellant also contends, for the first time on this appeal, that the opinions of Dr. Roquet and Dr. Goldwaser were "net opinions." We disagree.

"An expert may not provide an opinion at trial that constitutes 'mere net opinion.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)). The net opinion rule bars admission "of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). Accordingly, an expert must provide the factual basis and analysis that supports her or his opinion. Davis, 219 N.J. at 410.

Here, both Dr. Roquet and Dr. Goldwaser testified concerning the facts and analysis that supported their opinions. Both doctors had interviewed and evaluated appellant. They had also reviewed treatment records and used actuarial instruments that are generally accepted by professionals who assess sex offenders for the risk of re-offense. Accordingly, the State's experts provided the factual basis for their conclusions and explained the methodologies

they employed.  See In re Civil Commitment of A.Y., ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 26-28).

In summary, we conclude that the trial court used the appropriate standard and the court's findings were supported by substantial credible evidence in the record.  To the extent not specifically addressed, appellant's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4748-17T5