**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1639-19T1

LLOYD BUNDY by and
through his Power of
Attorney,
LLOYD BUNDY, JR.,

     Plaintiff-Appellant,

v.

BENTLEY SENIOR LIVING
AT PENNSAUKEN, BENTLEY
ALP, and KDG OPERATING
COMPANY, LLC,

     Defendants-Respondents.

_____

Argued January 11, 2021 – Decided February 5, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey,
Law Division, Camden County, Docket No. L-0450-16.

Brian P. Murphy argued the cause for appellant.

William J. Mundy argued the cause for respondents (Burns White, LLC, attorneys; Frantz J. Duncan, William J. Mundy, and Ahsan A. Jafry, on the brief).

PER CURIAM

This appeal arises out of a malpractice case against an assisted living facility. The trial court dismissed the lawsuit after ruling that plaintiff's liability expert's opinion concerning the critical standard of care was inadmissible. For the reasons that follow, we affirm.

These are the pertinent facts and circumstances. Plaintiff Lloyd Bundy, Sr., an eighty-one-year-old man with Alzheimer's, was a resident of defendants' assisted living facility known as Bentley Senior Living in Pennsauken. At about 11:30 a.m. on March 10, 2015, plaintiff had an unwitnessed fall in his room when he tripped over his roommate's walker. Plaintiff, who was injured in the fall, was taken to a hospital and diagnosed with a hip fracture, resulting in hip replacement surgery.

Plaintiff alleges defendants were negligent in allowing his roommate's walker to be left on his side of the room, contrary to his care plan to guard against such tripping hazards or "clutter." He surmises that a technician moved the walker when she came into the room at an unspecified time that morning to do cardiac testing on the roommate, and then failed to put the walker back in a

safe place. At her deposition, the technician did not outright deny she moved the walker, but rather stated if she had done so it was her practice to move it back after she was finished testing. Plaintiff himself did not see the technician or anyone else move the walker.

To support his liability theory of negligence, plaintiff relied on the expert opinions of a registered nurse he retained for the litigation. The expert has fifty years of experience as a nurse and thirty years as a nursing administrator, although not in an assisted living facility. She issued two expert reports, only one of which is in our record. In that supplied report, the expert opines defendants breached standards of care by failing to inspect plaintiff's room and allowing a tripping hazard to be present. She contends that failure violates state regulations, including N.J.A.C. 8:36-7.3, by failing to assure a patient's room is clutter free.

The expert's report does not specify a standard of care with respect to how frequently an assisted living facility must inspect a resident's room for tripping hazards. At the expert's deposition, defense counsel tried to pin her down on a time frame, but she repeatedly equivocated on the subject. Ultimately, the expert stated that a visual inspection of the room is "supposed to be" performed

"every hour."[1]  However, she did not mention any source for that purported time standard.

Defendants moved in limine to bar the nurse's expert testimony as inadmissible net opinion.  They concurrently moved for summary judgment.

After hearing oral argument, the trial court granted both motions.  Plaintiff then moved for reconsideration, asserting the judge had critically erred in overlooking plaintiff's expert's deposition testimony attesting to the "once per hour visual inspection" standard—a point plaintiff's counsel had not brought up at the oral argument on the motion.  The judge denied reconsideration,[2] and this appeal ensued.

---

[1]  At other points in her deposition, the expert alluded to a fifteen-minute standard, but she appears to have ultimately settled on a one-hour period, and that is the period advocated by counsel.

[2]  Plaintiff argues as a procedural matter that the motion judge should have reconsidered his original ruling because he "overlooked" portions of the expert's deposition testimony that had not been pointed out during oral argument.  See Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (concerning the grounds for reconsideration under Rule 4:49-2).  We do not hinge our analyses of the substantive issues on that alleged procedural oversight.  It is well established that appellate courts must review the correctness of trial court decisions, not simply the reasons cited in opinions by trial judges.  See, e.g., Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (citing Isko v. Planning Bd. of Livingston Twp., 51 N.J. 162, 175 (1968), abrogated on other grounds by Com. Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546 (1991)).  Having carefully reviewed the merits of the appeal, we discern no necessity to remand

A-1639-19T1

We first address the net opinion issue. The Supreme Court has published a series of recent cases with guidance on the subject.

The doctrine barring the admission at trial of net opinions is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (alteration in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). The net opinion doctrine requires experts to "give the why and wherefore" supporting their opinions, "rather than . . . mere conclusion[s]." Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

Experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). An expert's conclusion should be excluded "if it is based merely on unfounded speculation and unquantified possibilities." Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

this matter back to the trial court for additional reconsideration, as the deficiencies of plaintiff's expert's opinion are manifestly apparent.

Bearing in mind "the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record."  Ibid.; see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 401 (2014) ("[T]he standard of care [the expert] set forth represented only his personal view and was not founded upon any objective support.  His opinion as to the applicable standard of care thus constituted an inadmissible net opinion."); Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) ("[I]f an expert cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion.").

That said, experts may base their opinions upon unwritten industry standards without violating the net opinion doctrine.  See, e.g., Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 333, 334 n.4 (App. Div.) (noting that an expert's opinion may be based on unwritten "generally accepted standards, practices, or customs of the . . . industry") (citing N.J.R.E. 702), certif. denied, 230 N.J. 595 (2017); Davis, 219 N.J. at 413 (quoting Kaplan v. Skoloff & Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001)) (recognizing that the expert's conclusions might not have been inadmissible net opinion if he had referenced an "unwritten custom" of the industry).  The critical ingredient

is that the expert's opinion must be based upon written or unwritten objective standards recognized in the field. The opinion cannot be merely an expression of the expert's personal subjective view.

In the present case, the expert nurse's once-per-hour standard for inspecting a resident's room is a net opinion that lacks adequate objective support. That time interval is not specified in any federal or state statutes or regulations. Nor is it specified in guidelines set forth by the American Nursing Association. The regulations and state guidelines are more general, expressing overall policies of providing adequate services to meet the needs of residents. See, e.g., N.J.A.C. 8:36-5.1.

Here, plaintiff's expert provided no specifics for why the standard of inspection frequency was hourly, as opposed to, say, daily or once per shift. The omission of the hourly standard from her written report is telling.[3] Her

---

[3] We acknowledge that a court may permit an expert to supplement through deposition testimony the contents of her written expert reports, so long as the reports contain "the logical predicates and conclusions" for such testimony. Conrad v. Robbi, 341 N.J. Super. 424, 441 (App. Div. 2001) (quoting Velazquez ex rel. Velazquez v. Portadin, 321 N.J. Super. 558, 576 (App. Div. 1999), rev'd on other grounds, 163 N.J. 677 (2000)); see also McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 171 (App. Div. 1987). Here, there is no hint within the contents of the expert's report about how frequently a facility should inspect a resident's room for clutter, but instead generalities that are not time specific.

reluctance at deposition to commit to a time period further bespeaks the absence of an objective foundation for the opinion.

We appreciate, as did the trial court, that inspecting a patient's room at least once per hour may well be a reasonable standard, depending on how large or intensive the facility is, staffing levels,[4] patient care demands, and other variables. But the expert did not say where the one-hour standard comes from, other than her own personal subjective experience. She did not identify others in the field that utilize such a standard, or places where she has worked as an administrator that have done so. The number seems to have come out of thin air. The net opinion doctrine is not overcome by such conclusory and unmoored commentary, even from a person such as this nurse who we appreciate has many years of experience in the field.

---

The "logical predicates" for the one-hour standard were not previewed in a meaningful way.

[4] We recognize the expert's report opines that defendants must have lacked adequate staffing levels because plaintiff had managed to elope from the facility on two occasions. However, that likewise is an inadmissible net opinion, as the expert performed no numerical analysis of the facility's resident population and staffing levels. In addition, the fact that plaintiff eloped in the past must be understood in the context that a facility has an obligation to allow residents a certain degree of autonomy and freedom of movement. See N.J.A.C. 8:36-6.1 (requiring respect for "resident rights"). In any event, the focus of the appeal is on alleged inadequate inspections, not whether defendants employed sufficient staff to perform such inspections.

For these reasons, we conclude, albeit for reasons slightly different than those stated by the trial court, that the nurse's personal expression of a one-hour standard of care is inadmissible net opinion. The court did not misapply its discretion in excluding such an expert. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) (applying an abuse-of-discretion scope of review to a trial court's ruling on the admissibility of expert opinion in a civil case).

Having upheld the exclusion of plaintiff's liability expert, we readily agree that the court had a sound basis to grant summary judgment to defendants on the issue of malpractice liability. Plaintiff concedes that defendants are a licensed professional provider subject to statutory limitations on tort actions. They cannot be found liable for malpractice without appropriate expert opinion to support an alleged deviation from the appropriate standard of care. See N.J.S.A. 2A:53A-26 (encompassing within this statutory protection, among other occupational categories, a "health care facility as defined in [N.J.S.A. 26:2H-2]," which includes extended care facilities, skilled nursing homes, nursing homes, intermediate care facilities, residential health care facilities, and dementia care homes). There is no argument here that this is a "common knowledge" case that can go to a jury without proper expert support. Hence,

defendants are entitled to judgment as a matter of law.  <u>Brill v. Guardian Life</u>

<u>Ins. Co. of Am.</u>, 142 N.J. 520 (1995).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION