**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4410-18

MICHAEL PRICE II,

    Plaintiff-Appellant,

v.

LIFE TIME FITNESS, INC.,
BRYAN SMITH, PAUL RUSSO,
MARC POLOMBO, and ERIC
MOORE,

    Defendants-Respondents.

_____

Submitted January 27, 2021 – Decided May 6, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5564-16.

Alexander O. Bentsen, attorney for appellant.

Ogletree, Deakins, Nash, P.C., attorneys for respondents (Steven J. Luckner and Robin Koshy, on the brief).

PER CURIAM

Plaintiff Michael Price, II, appeals the May 1, 2019 dismissal of his eight-count complaint against his former employer defendant Life Time Fitness, Inc., and his former supervisors, Bryan Smith, Paul Russo, Marc Polombo, and Eric Moore. For the reasons stated on the record by Judge Stephen L. Petrillo in his cogent and thoughtful decision, we affirm.

Plaintiff was hired in November 2011 as a "Member Engagement Advisor" (MEA) at two of Life Time Fitness's New Jersey health clubs. While there, he became romantically involved with a colleague; they had a child together. Plaintiff's partner was terminated in May 2014, allegedly because she accused a general manager, named as a defendant in this case, of sexually harassing another employee. Plaintiff's partner sued, and settled the matter in July 2015.

Plaintiff missed his sales quota from July 2014 to April 2015, resulting in his termination on May 14, 2015. After failing to meet his quota for six consecutive months, he was placed on a "performance improvement plan" (PIP) in January 2015. The PIP required plaintiff to "[m]eet or exceed 90% of January [2015] and 100% of February 2015 sales goals and continue to achieve 100% of future month[s'] sales goals." Plaintiff failed to satisfy the PIP's objective; he met his February 2015 sales quota but missed his January 2015 sales quota.

A-4410-18

When plaintiff and his partner's child was born in March 2015, plaintiff elected to take paid time off (PTO) instead of unpaid leave under the New Jersey Family Leave Act (FLA), N.J.S.A. 34:11B-1 to -16. The general manager allowed him more PTO than the thirteen hours he had accrued to that date, and he was advised that the time he actually used would be offset against future accruals. Plaintiff took approximately two weeks. His sales quota was reduced during that time from thirty-nine to twenty-one new members, and he missed that target, selling only nineteen memberships. He was issued a second PIP in April, requiring him to sell 100% of his sales quota, or forty-three units. Plaintiff sold only twenty. Both PIPs warned that failure to meet the quota could result in termination.

Defendants claimed that during March 2015, Life Time Fitness conducted an internal audit of employees who added dependents to their health benefits during the prior period in October 2014. Plaintiff had added his partner, and thus received one of the approximately 400 letters issued by the company requesting supporting documentation. Despite failing to provide the required documentation, coverage continued for plaintiff's partner and child.

When plaintiff applied for an MEA position at a new location, he was not hired. The sales manager at the new facility explained that in addition to being

3

a "low performing employee[,]" plaintiff conducted the interview while he was driving a car. This "created the impression that he was not taking the interview seriously."

Defendants terminated plaintiff based on his failure to meet his second PIP. At that juncture, he had only sold seven units out of a required forty-two. During that timeframe, at least two other employees were placed on PIPs and subsequently terminated for poor performance.

On August 10, 2016, plaintiff filed a complaint against defendants. Plaintiff twice amended the complaint; the final second amended complaint alleged claims of: (1) retaliation under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, (count one); (2) hostile work environment under NJLAD (count two); (3) disparate treatment and disparate impact under NJLAD (count three); (4) family relationship discrimination under NJLAD (count four); (5) racial discrimination under NJLAD (count five); (6) violation of the FLA (count six); (7) violation of public policy (count seven); and (8) intentional infliction of emotional distress (IIED) (count eight). To summarize the facts plaintiff alleged underlying the complaint, he contends that by not hiring him at Life Time's new location, subjecting him to PIPs, contesting his health and unemployment benefits, and firing him, defendants unlawfully

discriminated, retaliated, and terminated him because of his relationship with his partner, and because he "was the only half African American half Filipino American mixed race member of the Life Time Sales team."

Now in his appeal challenging Judge Petrillo's grant of summary judgment, plaintiff asserts the following errors:

POINT I

THE [TRIAL] COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS.

POINT II

FAMILY RELATIONSHIP DISCRIMINATION[,] COUNT IV OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

POINT III

RACIAL DISCRIMINATION[,] COUNT V OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

POINT IV

HOSTILE WORK ENVIRONMENT[,] COUNT II OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

POINT V

RETALIATION[,] COUNT I OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

### POINT VI

NJ FAMILY LEAVE ACT[,] COUNT VI OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

### POINT VII

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS[,] COUNT VIII OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

### POINT VIII

PUBLIC POLICY[,] COUNT VII OF THE COMPLAINT[,] SHOULD PROCEED TO TRIAL.

Judge Petrillo thoroughly canvassed the relevant precedents in deciding the motion. With regard to the dismissal of plaintiff's first NJLAD count, alleging retaliation, and the family relationship discrimination claims under the fourth count, the judge relied upon plaintiff's failure to causally connect his partner's protected activity to his dismissal. Her lawsuit was pending when he was fired. As the judge put it, "his objectively below average performance" triggered his termination.

Plaintiff did not identify conduct that could be considered so severe or pervasive as to constitute a hostile work environment under the NJLAD. In fact, nothing even raised the specter of the hostile work environment claim he asserted in count two.

A-4410-18

Plaintiff's disparate treatment and disparate impact claim, count three, also lacked support in the record. The judge noted that plaintiff "failed to identify any facially neutral specific employment practice at issue." At his deposition, plaintiff conceded "that he was not aware of any of defendant[s'] policies [having] a disparate impact on him [attributable to] race."

The racial discrimination claim, count five, was equally unsupported. Plaintiff proffered nothing in support of an adverse employment action attributable to race or any employment actions which would give rise to an inference of race discrimination.

Plaintiff could not claim any damages arising from his employer's implementation of the FLA, as he did not take leave under that statute, but merely took advantage of accrued PTO. Count six lacked merit.

The public policy and intentional infliction of emotional distress claims, counts seven and eight, were duplicative of plaintiff's NJLAD claims. They too lacked any record support.

We review summary judgment decisions de novo. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). Based on our review of the competent evidential materials presented, viewed in the light most favorable to plaintiff, no rational factfinder

could have resolved the issues in his favor.  See <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).  No issue of material fact exists, and those facts which are material do not constitute support for any of plaintiff's causes of action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION